IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROVIDENCE TOWN CENTER LP,           :   CIVIL ACTION
                                     :
            Plaintiff,               :   NO. 09-3902
                                     :
      v.                             :
                                     :
RAYMOURS FURNITURE COMPANY,          :
INC.,                                :
            Defendant.               :

**MEMORANDUM RE: MOTION TO STRIKE**

**Baylson, J.**                                              **November 13, 2009**

**I.    INTRODUCTION**

Plaintiff Providence Town Center LP ("Providence") and Defendant Raymours Furniture Co. ("Raymours") entered into a lease agreement ("Lease") respecting commercial property. Providence commenced this action, alleging, inter alia, that Raymours breached the Lease. Presently before the Court is Raymours's Motion to Strike Paragraphs 19 and 49 of Providence's Complaint pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") (Docket No. 3).[1] For the reasons stated below, the Motion will be denied without prejudice.

---

[1] The Complaint provides in relevant part:

> 19.    On or about April 1, 2009, [Providence]'s representative Lance Billingsley was informed by [Raymours's] representative Scott Milnamow that [Raymours] did not want to use its capital to construct the building that it was required to construct under the Lease.
>
> ***
>
> 49.    [Raymours] is aware of these facts and has attempted to use its wrongful termination to renegotiate its Lease. Such conduct represents bad faith and the Court may use its equitable powers to preclude [Raymours] from benefitting based on its misconduct.

(Docket No. 1, Ex. A-1.) The paragraphs preceding paragraph 49 set forth breach of contract and specific performance counts, and "these facts" appears to refer to Raymours knowledge that it wrongfully terminated the Lease.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The parties' dispute concerns a lease agreement entered into on November 14, 2008, for a term of twenty years for the rental of commercial space in Upper Providence Township, Montgomery County, Pennsylvania. (Docket No. 1, Ex. A-2.) Under the terms of the Lease, Raymours was to construct the building and pay for the costs of construction, and Providence, as the landlord, was required to obtain the township's approval of the proposed building, façade, and signage. (Compl. ¶¶ 4-5, Docket No. 1, Ex. A-1.) On March 17, 2009, Providence alleges that Raymours demanded that Providence demonstrate that it had obtained the necessary permits and approval. (Compl. ¶ 13.) Two days later, Providence informed Raymours that Providence had obtained a permit for the building's accompanying signage. (Compl. ¶ 11.)

On March 24, 2009, Raymours's counsel sent Providence a letter stating that Raymours intended to terminate the Lease unless Providence obtained "'final and unappealable approval' of the [relevant permits] as required by the Lease." (Compl. ¶ 14; Def.'s Mot. to Strike 2.) On March 31, 2009, Providence responded to "address Tenant's alleged concern" by indicating that Providence had obtained the building plan and façade permits and attaching such permits. (Compl. ¶ 18.) On April 1, 2009, the parties' representatives "met in person and by phone" "to discuss the dispute between plaintiff and Raymours and possible settlement thereof." (Def.'s Mot. to Strike 3; see also Pl.'s Resp. to Def.'s Mot. to Strike 8 [hereinafter Pl.'s Resp.], Docket No. 5.) Two days later, Providence "declared [Raymours] in default of the Lease." (Compl. ¶ 20.)

Providence commenced this action in the Court of Common Pleas in Montgomery County, Pennsylvania, alleging that Raymours breached the Lease. (Docket No. 1, Ex. A-1.) On

2

August 27, 2009, Raymours removed the case to this Court (Docket No. 1), and filed the pending Motion to Strike Paragraphs 19 and 49 of the Complaint.

## III. LEGAL STANDARD

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber & Hardware, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (Rufe, J.). A motion to strike is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Id.

## IV. DISCUSSION

### A. The Parties' Contentions

Raymours seeks to strike paragraphs 19 and 49 of the Complaint pursuant to Rule 12(f). Raymours contends that these paragraphs refer to discussions that took place after both parties disputed the terms and performance of the Lease, were "undertaken solely in an effort to resolve amicably the [parties'] dispute," and are sought to be introduced "in order to establish both the validity of [Providence's] claims and the invalidity of the positions asserted by Raymours." (Def.'s Mot. to Strike 4.) Raymours thereby contends that paragraphs 19 and 49 "improperly refer[] to . . . statements made by Raymours['s] representative[s] . . . during the course of privileged settlement discussions." (Def.'s Mot. to Strike 4.) Raymours then avers that the Court has previously determined that Rule 408 is a basis for striking immaterial allegations in a

3

complaint, and thus, that paragraphs 19 and 49 should be stricken from Providence's Complaint. (Def.'s Mot. to Strike 3-5.)

Providence responds that the statements in question were "made during a discussion between the parties of the issues giving rise to this dispute, the statement was not made during settlement negotiations." (Pl.'s Resp. 8.) In particular, Providence contends that when the statements were made, it had not yet "issued a default notice," and neither party had made a settlement offer or indicated that it was "considering litigation." (Pl.'s Resp. 8.) Providence avers, in the alternative, that even if the paragraphs relate to settlement negotiations, "there is no possibility that the statement would not be admissible for other purposes" than to prove liability, "as permitted by Rule 408." (Pl.'s Resp. 9-10.) Providence, however, did not specify what permissible purpose applies to the statements in question. Providence concludes that because "courts genreally deny Rule 12(f) motions that allege violation of Rule 408" (Pl.'s Resp. 6), the Motion should be denied.

Raymours replies that Providence has conceded that the discussions referred to in the challenged paragraphs of the Complaint occurred after Raymours terminated the Lease, and thus, after the parties' dispute had arisen, thereby triggering Rule 408. (Def.'s Reply to Pl.'s Resp. 2-3, Docket No. 6.) Raymours then avers that although Rule 408 does not bar the admission of evidence respecting intent or motive even where the evidence arises in the context of settlement, Providence brings a "'plain vanilla' breach of contract claim," rendering evidence of Raymours's alleged bad faith "utterly immaterial and irrelevant." (Def.'s Reply 4-5.) Raymours accordingly contends that paragraphs 19 and 49 serve no permissible purpose under Rule 408, requiring them to be stricken as immaterial under Rule 12(f). (Def.'s Reply 6.)

**B.     Analysis**

The Court must determine first whether the substance of paragraphs 19 and 49 of the Complaint implicates Rule 408 by containing statements that were made during the course of settlement discussions, and if so, whether the statements are being offered for a permitted or prohibited purpose.  See Ciolli v. Iravani, 625 F. Supp. 2d 276, 285-89 (E.D. Pa. 2009) (Davis, J.) (applying this two-part Rule 408 analysis before turning to the Rule 12(f) inquiry).  The Court will then evaluate whether the statements are immaterial and should be stricken from the Complaint under Rule 12(f).

**1.     Rule 408**

Rule 408 prohibits the admission into evidence of "furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise the claim; and conduct or statements made in compromise negotiations regarding the claim" that is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."  Fed. R. Evid. 408(a).  Rule 408, however, "does not require exclusion if the evidence is offered for . . . . permissible purposes[,] includ[ing] proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution."  Id. 408(b).  "[C]ourts will admit settlement evidence pursuant to [Rule] 408 for purposes of demonstrating knowledge or intent."  Ciolli, 625 F. Supp. 2d at 288; but see id. at 285 (rejecting the plaintiff's attempt to "repackage evidence that is so obviously related to liability in order to skirt the bounds" of Rule 408).  "Because it is generally believed that settlement negotiations will be inhibited if the parties are aware their statements may later be used as admissions of liability, [Rule] 408 acts to protect freedom of discussion during

negotiations and thereby encourage settlements among the parties." Id. at 285 (internal quotation marks omitted).

### a. Statements Respecting Settlement Negotiations

Parties must be engaged in an "actual dispute, or at least an apparent difference of views . . . concerning the validity or amount of a claim" when the statements are made in order for those statements to concern settlement negotiations for Rule 408 purposes. Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 526 (3d Cir. 1995). In Affiliated Manufacturers, the Third Circuit clarified that the parties' differences of opinion need not have "crystallize[d] to the point of litigation," and that "less formal stages of a dispute" also fall under Rule 408's purview. Id. at 527-28. The parties in Affiliated Manufacturers disputed whether payments had been made under two invoices prior to any threat of litigation. See id. The Third Circuit affirmed the District Court of New Jersey's in limine ruling prior to trial that found inadmissible any discussions respecting settlement because the dispute relating to the invoices implicated Rule 408. Id. at 528.

The Affiliated Manufacturers court also noted that "it can be difficult to discern whether an 'offer' was made to attempt to 'compromise a claim,'" because this inquiry is fact-dependent, and the "existence of a disputed claim as well as the timing of the offer are relevant to making this determination." Id. In Affiliated Manufacturers, the correspondence conveying the parties' contentions regarding the disputed invoices contained both parties' offers to modify the amount owed, which the Third Circuit determined to represent settlement offers to compromise under Rule 408. Id.

Here, at the earliest, Providence and Raymours' dispute arose on March 17, 2009, when Raymours initially demanded proof that Providence had obtained the necessary permits, (Compl. ¶ 13). By March 31, 2009, when Providence attempted to "address [Raymours's] alleged concern" by indicating that Providence had obtained the building plan and façade permits and attaching such permits, the parties had already indicated that they disputed whether Providence had satisfied its obligations under the Lease. By the time that the parties met on April 1, 2009, to discuss their disputes respecting the Lease and each party's performance under the Lease, a "live dispute" had already arisen.

As for the substance of the statements in question, Paragraph 19 of the Complaint refers to Raymours's statement indicating that it might not perform its obligation of using its capital to construct the building, as it was required to do under the Lease. The Court concludes that Raymours has a strong argument that paragraph 19 relates to settlement negotiations for Rule 408 purposes, because it was made on April 1, 2009, after the dispute between the parties over what the Lease required the parties to do had already arisen and the parties, as Providence concedes, were discussing "the issues giving rise to this dispute," (Pl.'s Resp. 8).

As for paragraph 49, it alleges that Raymours is aware that its breach of the Lease adversely impacted Providence, and in fact "attempted to use its wrongful termination to renegotiate its Lease." (Compl. ¶ 49.) Although the paragraph as a whole conveys Providence's overall position that Raymours breached the Lease, the clause referencing Raymours's alleged attempt to renegotiate the Lease indicates a desire to resolve the parties' dispute. As a result, paragraph 49 also likely falls within Rule 408's purview. However, the Court has not made a determinative conclusion on either this issue or on whether the evidence would be admissible.

## 2. Permitted and Prohibited Uses Under Rule 408

When settlement negotiation statements are sought to be admitted for a permitted purpose, such as showing knowledge, intent, or good faith, the Court may exercise its discretion to admit or not to admit them. See Ciolli, 625 F. Supp. 2d at 287-88. Rule 408, however, favors exclusion when the settlement negotiations are being offered for a prohibited purpose such as to prove the defendant's liability or the amount of a disputed claim. See Affiliated Mfrs., 56 F.3d at 528 (recognizing that the courts should err toward exclusion in close cases).

Providence's primary allegation is that Raymours unlawfully terminated the Lease. Paragraphs 19 and 49 of the Complaint describe Raymours's alleged unwillingness to "use its capital to construct the Building that it was required to construct under the [L]ease," and attempt to renegotiate the Lease, respectively. (Compl. ¶¶ 19, 49.) Paragraph 19 alleges that Raymours indicated that it "did not want to" fulfill its contractual duties (Compl. ¶ 19), but falls short of explaining why Raymours's ultimate decision to terminate the Lease was unlawful and not triggered by Providence's inability to meet its obligations, as Raymours contends. Although Providence has not articulated a permitted purpose for which it would seek to admit the statements contained in paragraph 19, such statements could be admitted to show Raymours's intent to terminate the Lease irrespective of Providence's ability to procure township approval of the building's specifications. Paragraph 49, unlike paragraph 19, does not discuss Raymours's failure to meet its contractual obligations, and thus, also does not speak to the question of its liability; instead, paragraph 49 alleges that Raymours terminated the lease in "bad faith," as well as for the purpose of renegotiating the lease, both of which are permitted purposes under Rule 408 and the limited role of Rule 12(b). Accordingly, neither paragraph sought to be stricken is

being admitted for a prohibited purpose and the Court has the discretion to admit or not to admit the statements.

In exercising its discretion, however, the Court remains mindful of the purposes underlying Rule 408. Here, paragraph 19 conveys Raymours's alleged concession of its desire to not perform its obligations under the Lease, which if admitted, could be construed as an indication of Raymours's weakness, rather than a mere attempt to arrive at a settlement amenable to Providence, an effort that Rule 408 aims to protect. As for paragraph 49, it suggests that Raymours, by participating in settlement negotiations, engaged in bad faith, which is at odds with Rule 408's goal of protecting and not dissuading candid settlement discussions, without fear of reprisal. As Judge Davis explained in Ciolli,

> [p]art of an effective settlement process is a frank discussion of the relative merits of each party's case. If parties were permitted to take the content of these negotiations and use them in subsequent litigation for wrongful initiation of civil proceedings or abuse of process, then counsel would put themselves and their clients at risk of suit in every settlement conference in which they participate, resulting in either less effective or even non-existent negotiations.

625 F. Supp. 2d at 288. Judge Davis's thorough opinion is authoritative and likely describes what Providence seeks to do by including paragraphs 19 and 49 in the Complaint, even though this is "the situation that [Rule] 408 is designed to avoid," id. The Court therefore concludes that the policy aims of Rule 408 likely weigh in favor of excluding the evidence referenced in paragraphs 19 and 49 from admission as evidence.[2] The remaining question that the Court must

---

[2] This Court recognizes that other courts have construed Rule 408 more narrowly in denying Rule 12(f) motions to strike on the basis that statements that do not clearly concern settlement negotiations are not inadmissible. See, e.g., Berry v. Lee, 428 F. Supp. 2d 546, 563-64 (N.D. Tex. 2006); Yankelevitz v. Cornell Univ., No. 95 CIV. 4593 PKL, 1997 WL 115651, at *5 (S.D.N.Y. Mar. 14, 1997); Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 94 (S.D.N.Y. 1995). The Court, however, declines to follow these cases because contrary and binding precedent has declined to adopt this understanding of Rule 408, in light of the policies underlying the rule.

address is whether such paragraphs, even if probably inadmissible under Rule 408, are immaterial for purposes of Rule 12(f) and should be stricken from the Complaint.

### 2.  Rule 12(f)

Rule 12(f) motions are generally disfavored, McInerney, 244 F. Supp. 2d at 402; however, some judges of this Court have granted motions to strike references to settlement negotiations that they found to be inadmissible under Rule 408 and thus immaterial. See, e.g., Ciolli, 625 F. Supp. 2d at 284-89; Bergman v. Jefferson-Pilot Life Ins. Co., No. 03-4459, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003) (Ludwig, J.); Scott v. Twp. of Bristol, No. 90-1412, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991) (Hutton, J.); Agnew v. Aydin Corp., No. 88-3436, 1988 WL 92872, at *4 (E.D. Pa. Sept. 6, 1988) (Newcomer, J.).

The Court will not strike paragraphs 19 and 49 because motions to strike are disfavored, the parties dispute whether the paragraphs "specifically state the content of the [parties'] settlement negotiations," Ciolli, 625 F. Supp. 2d at 289, and statements contained in the paragraphs may be admissible for some limited purpose. Raymours may reassert its position by filing a motion in limine pre-trial or at trial.

## V.  CONCLUSION

For the reasons stated above, Raymours's Motion to Strike will be denied without prejudice. An appropriate Order follows.

O:\CIVIL 09-10\09-3902 Providence Town Ctr. v. Raymours Furniture\Providence Town Ctr. LP v. Raymours Furniture Co. - Mem. Mot. to Strike.wpd